In the Circuit Court for the County of Marion and State of Oregon.

## THE STATE OF OREGON *v.* S. F. CHADWICK, AARON ROSE, ASHER MARKS AND B. P. SMITH.

No. 2972—Action upon an Official Bond.

*Before Matthew P. Deady, Referee.*

*John M. Thompson* and *Addison C. Gibbs,* for the plaintiff.

*S. F. Chadwick,* in propria persona, and for his co-defendants.

The referee having heard the allegations and proofs of the parties and the arguments of counsel, now finds and states the conclusions of facts herein as follows:

I.  That at the general election held in June, 1870, the defendant, S. F. Chadwick, was duly elected secretary of state for the state of Oregon; and that afterwards, to-wit: on July 1, 1874, said defendant as principal, together with the other defendants herein, namely: Aaron Rose, Asher Marks and B. P. Smith, as his sureties, executed and delivered to the plaintiff their certain bond in the penal sum of $10,000 as alleged in the complaint herein, to be void upon the performance, among others, of the following condition, to-wit: that said Chadwick would "faithfully discharge the duties of his office as secretary of the state of Oregon, and also as auditor;" which bond was afterwards, to-wit: on July 7, 1874, duly deposited by said Chadwick, together with his oath of office, in the executive office of said state, and then and there duly approved by the governor thereof; and that afterwards, to-wit: on July 14, 1874, said Chadwick by virtue of the premises, entered upon the said office as secretary of state and remained therein and performed the duties thereof until September 9, 1878;

II. That the defendant Chadwick during said period did not faithfully discharge the duties of his said office as secretary and auditor, in this:

(1). That at divers and sundry times, he audited and allowed 57 different accounts, presented to him by the sheriffs of sundry counties in this state for mileage, claimed to have been earned in conveying 57 insane persons to the asylum for the insane, amounting in the aggregate to $5,942 30, and drew his warrants upon the treasurer of state in favor of said sheriffs respectively, for various sums in payment of said accounts, amounting in the aggregate to the sum aforesaid, by means whereof the said sheriffs wrongfully obtained the same from the treasury of the plaintiff, as alleged in the complaint herein;

(a). That said accounts for mileage so audited and allowed were false and illegal, because there was then no law that gave a sheriff mileage as such for said services, and because in addition thereto the accounts for the actual expense of said services were at the same time presented to said secretary by said sheriffs and by him audited and allowed, and warrants drawn upon the treasury therefor;

(2). That at divers and sundry times he audited and allowed 24 different accounts presented to him by the sheriffs of sundry counties in this state for mileage earned in conveying 24 convicts to the penitentiary, amounting in the aggregate to $3,871 50, and drew his warrants upon the treasurer of state in favor of said sheriffs, respectively, for various sums in payment of said accounts, amounting in the aggregate to the sum aforesaid, by means whereof the said sheriffs wrongfully obtained the same from the treasury of the plaintiff, as alleged in the complaint herein;

(a). That said last mentioned accounts for mileage, so audited and allowed, were false and illegal, because there was then no law that gave a sheriff mileage, as such, for said services and because, in addition thereto, the accounts for the actual expense of said services were at the same time presented to said secretary by said sheriffs, and by him audited and allowed, and warrants drawn upon the treasury therefor;

(3). That at divers and sundry times he audited and allowed three different accounts presented to him by the sheriffs of sundry counties in this state for a per diem earned

in conveying sundry convicts to the penitentiary and insane persons to the asylum, amounting in the aggregate to $150 and drew his warrants upon the treasurer of state in favor of said sheriffs, respectively, for various sums in payment of said accounts amounting in the aggregate to the sum aforesaid, by means whereof the said sheriffs wrongfully obtained the same from the treasury of the plaintiff, as alleged in the complaint herein;

(a). That said accounts for a per diem were false and illegal, because they were for 50 days in excess of the time actually employed by said sheriffs in the performance of said service;

(4). That at divers and sundry times he audited and allowed three different accounts for expense of guards and three different accounts for expense of hacks presented to him by the sheriffs of sundry counties in this state as incurred in conveying sundry convicts to the penitentiary, amounting in the aggregate to the sum of $120 50, and drew his warrants upon the treasurer of state in favor of said sheriffs, respectively, for various sums in payment of said accounts, amounting in the aggregate to the sum aforesaid, by means whereof the said sheriffs wrongfully obtained the same from the treasury of the plaintiff, as alleged in the complaint herein;

(a). That said accounts for the expense of guard were illegal because the guards were employed without the certificate of the judge or contrary thereto, and those for the expense of hacks were false and illegal because they were at least so much in excess of the actual cost thereof;

(5). That on December 1, 1874, and every three months thereafter, to and inclusive of September 1, 1875, he audited and allowed an account in favor of T. H. Cann, as assistant secretary of state, for the sum of $100 and drew his warrants upon the treasurer of state therefor, by means whereof the sum of $400 was wrongfully obtained by said Chadwick from the treasury of the plaintiff;

(a). That said accounts were all illegal, because said Cann was not during said period the assistant secretary of state, and did not act as such or perform the duties thereof;

(6). That on December 1, 1874, and on every three months thereafter to and inclusive of September 1, 1878, he audited and allowed an account for the sum of $400 and

drew his warrants upon the treasurer of state therefor, by means whereof he obtained $6,400 from the treasury of the plaintiff;

(a). That $2,400 of said accounts were illegal, because said secretary was not entitled to draw upon said treasury for clerical aid for a greater sum than $4,000;

(7). That as to the other breaches of the condition of said bond alleged in the complaint herein, to-wit: the illegal and excessive allowance of accounts presented by sundry sheriffs for stage and railway fare, jail fees, tavern bills or the like, amounting in the aggregate to $252 54, it does not appear that said Chadwick unfaithfully discharged the duties of his said office in auditing and allowing the same.

And as conclusions of law from the premises the referee now finds and states the following:

I.   That the defendant Chadwick did not faithfully keep the condition of his bond in auditing and allowing the accounts aforesaid and drawing his warrants on the treasurer therefor, to-wit:

For mileage in conveying convicts...........$ 5,942 30
For mileage in conveying the insane.......... 3,871 50
For per diem in excess of the days actually em-
    ployed............................... 153 00
For expense of guards and hacks in excess of
    that incurred...................... 120 00
For salary of assistant secretary............. 400 00
For clerical aid in excess of the amount allowed
    by law............................ 2,400 00
                                        ‾‾‾‾‾‾‾‾‾
                                        $12,887 30

To the damage of the plaintiff in said sum of $12,887 30.

II.   That by reason of the premises the plaintiff is entitled to recover off and from the defendants herein the sum of $10,000, the full penalty of said bond, together with its legal costs and disbursements in this behalf expended.

## OPINION OF THE REFEREE.

The answer in this case simply denies that the secretary did *wrongfully* audit and allow these several accounts as alleged in the complaint, and avers that the same "were presented and allowed in good faith."

Upon the trial, it was admitted that the *fact* of the auditing and payment of these accounts as alleged in the complaint was not denied by the answer, and therefore it was treated as a demurrer to the complaint.

The secretary, in auditing these accounts, though a ministerial officer, was acting judicially and therefore is not responsible for mere mistakes or errors of judgment as to the law or the facts, nor at all unless it satisfactorily appears that he acted from wilfulness, malice, corruption or that his conduct was the result of gross negligence. In other words, he is only responsible for good faith and ordinary care and competency. (See the opinion of the referee in *The State* v. *Chadwick, et al.*, No. 2971, *supra*.)

As to the accounts for the salary of the assistant secretary and clerical aid, the reasons for the findings concerning similar accounts in that case apply in this as well as the suggestions concerning the relief which the secretary is or may be entitled to in this behalf.

The other question of importance in this case is—was a sheriff entitled to mileage in addition to his actual expenses for conveying a convict or insane person, after the passage of the act of October 24, 1874?

Up to that time, a sheriff was entitled to charge mileage for himself and the convict and insane and the expense of guard, and the hire and board of a horse for each person conveyed.

Section 5 of the act of 1874, *supra*, (Ses. L., p. 125,) provides that:

"The sheriff shall receive for conveying a convict to the penitentiary, and delivering him to the proper officer thereof, three dollars a day for each day actually engaged, besides *necessary traveling expenses* for himself and each convict, and the necessary expenses incurred in guarding such convict during such conveyance, to be paid out of the state treasury." Then follows a proviso prohibiting any

allowance for guards between points where there is communication by railway or steamboat.

This act also repleaed § 4 of the act of January 12, 1859, (Or. L., p. 607,) prescribing the number of miles for a day's travel; and took effect from its passage.

But notwithstanding this, the secretary continued to allow the sheriffs mileage for themselves, convicts and guard, in addition to their "traveling expenses."    As mileage is only a fixed sum allowed for "traveling expenses," the result was that such expenses were allowed and paid twice—once actually and by name, and again constructively and under the name of mileage.

This result is so unreasonable, not to say unjust to the state, that the secretary is not excusable for allowing the accounts for mileage, unless he was compelled to do so by some plain and express provision of law.

The authority relied upon for this double payment of "traveling expenses" is § 14 of the act of October 24, 1864, (Or. L., p. 605,) which reads:

"Every officer or person *whose fees are prescribed in this chapter* who shall be required to travel in order to execute or perform any public duty, in addition to the fees hereinbefore prescribed, shall be entitled to mileage, at the rate of ten cents per mile, in going to and returning from the place where the service is performed."

The word "chapter" as it occurs in this section is the substitute of the compiler for the word "act" in the original. Read then, as it must be for the purposes of this inquiry—"Every officer or person whose fees are prescribed in this *act*"—that is, the act of October 24, 1864—it is clear that it does not apply to any officer whose fees are *not* prescribed by that act.

The act of 1874 relates solely to the fees of clerks and sheriffs.    It is entitled "an act to repeal" certain acts and sections of acts therein named, relating to the fees of these officers, "and to prescribe the fees of clerks and sheriffs."

Section 4 of the act of 1864, prescribed the fees of sheriffs, but the act of October 29, 1870, (Ses. L., p. 72,) *undertook* to substitute § 3 of itself for such section without specially repealing it or purporting to amend it; but the act of October 23, 1872, (Ses. L., p. 74,) expressly repealed both said sections 3 and 4 and amended and re-enacted the latter.

Section 4 of the act of 1864 may then be considered as in force in some form and as prescribing the fees of sheriffs until the passage of the act of 1874. In that view of the matter, the word "chapter" was, as a matter of convenience, substituted in the compilation for "act."

But the act of 1874 expressly repeals said § 4, and does not re-enact it. It is a new, distinct and independent act containing ten sections—two of which are taken up with repeals, one with the emergency clause, while the seven others are devoted to the subject of fees of clerks and sheriffs, the fifth of which prescribes the fees or compensation of sheriffs for conveying a convict to the penitentiary.

The allowance of this mileage cannot then be justified by said § 14, because the fees of sheriffs during the period covered by the complaint herein, were *not* prescribed by the act of 1864, but that of 1874.

The fact that by the act of October 20, 1876, (Ses. L., p. 34,) § 14, *supra*, was amended so as to except assessors from its operation and to include all other persons whose fees are prescribed "in this chapter," does not affect the question, for the fees of sheriffs were not then prescribed by chapter 2 of the Miss. Laws, nor had they been since the passage of the act of 1874.

Neither do I think that said § 14 *ever* applied to the transaction or act of conveying a convict to the penitentiary. The compensation prescribed by the act of 1864, (§ 4) for such service, consisted of a per diem, mileage and certain expenses. These are not "fees" in the ordinary sense of that word, nor is the conveying of a convict, which consists in traveling to the penitentiary and back, a "service" that "is performed" at a particular "*place*," to which the sheriff goes for that purpose—as the serving of a summons or other process, and for which a specific "fee" is allowed.

But the convincing argument upon this point is derived from the fact that § 4 of the act of 1864—the very part of such act which prescribes the "fees" of sheriffs—contained a specific provision giving the sheriff mileage when engaged in conveying a convict. Now, if this mileage was a fee prescribed by the act within the meaning of § 14, then the sheriff would get double mileage for this service—once under § 4 as a *fee*, and once under § 14 as *mileage*. Such never was the intention or purpose of the act of 1864, and no one

ever claimed such a construction for it.    But now that § 4 is repealed, and the "fees" of sheriffs are no longer prescribed by the act of 1864 there is no ground for claiming that§ 14 is applicable to the compensation of conveying a convict.

There being, then, no plain and specific provision of law requiring the payment of mileage to sheriffs in such cases, and the manifest consequences of such payment being to give them double pay for "traveling expenses," while the act of 1874, which purports and was enacted to regulate the whole subject of sheriffs' fees, expressly repealed § 4 of the act of 1864, giving mileage in such cases, and substituted actual expenses therefor, I am unable to discover any reasonable or plausible ground upon which the secretary could have proceeded in allowing these sheriffs mileage in addition to the "necessary traveling expenses," and therefore have reluctantly concluded that in so doing he acted negligently and without sufficient care.    This being so, he is responsible for the damage suffered by the plaintiff in consequence of his failure in this respect to faithfully keep the condition of his bond.

The law (act Oct. 28, 1868, Or. L., p. 623,) having provided that a sheriff "shall receive the same fees and compensation" for conveying the insane to the asylum as for conveying convicts to the penitentiary, it follows that the allowances by the secretary of mileage for conveying the former was also illegal and without any reasonable excuse.

If it appeared that there was any doubt or serious question of right or law involved in the matter of allowing this mileage, why, then, the secretary having in good faith exercised his judgment in the premises, would not be responsible for the consequences even though it should turn out that he acted erroneously.

But although it may have required some examination of the statutes to ascertain what compensation sheriffs were entitled to for conveying convicts and insane since October 29, 1874, there was no difficulty in finding the law and applying it.    In the act of 1874 was a plain and complete direction upon the subject, and it was only by going out of the way that § 14, *supra*, was brought into the question at all.    And then by a palpable misapplication of it this mileage has been allowed—and that in the face of the manifest

purpose and intent of the legislature in passing the act of 1874, taking away mileage and giving actual expenses in place of it.

It is understood that the supreme court of the state, in the case of *Crossen* v. *Earhart*, decided last February, but not yet reported, held that a sheriff is not entitled, since the act of 1874, to mileage for conveying convicts, nor to any other compensation than that allowed by § 5 of that act. But I have not been furnished with the opinion or seen it, and therefore have not had the benefit of it in the examination of the subject.

As to the allowances for excessive per diem, expense of guard and hacks, the complaint explicitly alleges they were in excess of what was earned, authorized or expended, while the answer admits the fact of the allowances, but only denies that they were wrongful and avers that they were made in good faith.

Upon reflection I have concluded that the answer only raises the question of law, as to the legality of the allowances and the responsibility of the secretary on account of them. The per diem allowed by the complaint seems to be reasonable, as four days for conveying an insane person from The Dalles to the asylum, instead of 10, as charged and allowed; $64 50 of the allowance for guard is alleged to have been made contrary to the judge's order and $6 of it without it. These facts are not denied, and if they are true, the conclusion of the answer, that the allowance was not wrongful, is clearly incorrect. The amount allowed in the complaint for hack hire seems reasonable and correct, as $3 for conveying the sheriff, one convict and guard from Portland to the depot in East Portland, and from Salem to the penitentiary, instead of $10 charged by the sheriff and allowed by the secretary. And the very fact of allowance of such accounts forces the conclusion in my mind that it was done wilfully or negligently—without due consideration or care for the rights of the plaintiff. It is so well known to every person of the general intelligence and local experience of the secretary—or even much less—that the journey between Portland and The Dalles only occupies one day instead of four, and that hack hire from Portland to the east side depot is at most $1 instead of $3 33⅓, as charged

and allowed, that no other conclusion is possible from the premises.

As to the $252 54 that I have found upon in favor of the defendant, there was a lack of proof. The facts were not of such general notoriety or the implied admission of the answer, owing to the nature of the charge in the complaint, was not sufficiently explicit to enable me to find against the defendants with certainty. Yet it is very probable that even some of those allowances are illegal because excessive.

For instance, in conveying seven convicts from Clatsop county to the penitentiary, a charge called "jail fees at Portland" of $19 94 was made and allowed. It does not seem reasonable that it should cost $2 84 a night to keep a convict in the public jail at Portland. But some portion, and probably the half of it, was a proper charge, and as I am unable without proof to say with certainty how much of it is excessive, I have found against the plaintiff upon it.

The same may be said of allowing a sheriff a hotel bill of $5 for one night at Salem instead of $2 50.

The findings of fact foot up $12,887 30 damages, but as this is a suit upon the bond of the defendants, judgment cannot be given against them in a greater sum than the penalty thereof—$10,000.

It may be unnecessary to suggest that I have reached these conclusions reluctantly and with regret, but such is the fact.

MATTHEW P. DEADY, Referee.

July 27, 1880.

[The following decision—the first ever printed west of the Rocky Mountains—was published in the *Oregon Spectator* over 36 years ago. While it may not be useful as a precedent under our present system of laws and jurisprudence, it is considered that its merits, as a fragment of the history of Oregon's primitive days, entitles it to the space it now fills.—REPORTER.]